Robert Dean PHELPS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 9045.

United States Court of Appeals Tenth Circuit.

Feb. 6, 1967.

Certiorari Denied May 15, 1967. See 87 S.Ct. 1701.

James A. Clark, Denver, Colo., for appellant.

John M. Imel, Tulsa, Okl. (Lawrence A. McSoud and Robert P. Santee, Tulsa, Okl., with him on brief), for appellee.

Before MURRAH, Chief Judge, and HILL and SETH, Circuit Judges.

MURRAH, Chief Judge.

This criminal appeal, taken by leave of the trial court more than five years after imposition of sentence, is dismissed for lack of jurisdiction to entertain it.

The underlying facts are these. The appellant Phelps and one Clonce were separately charged with entering the same federally insured bank with intent to commit larceny. 18 U.S.C. § 2113(a). The two cases were consolidated for jury trial and the defendants, represented by the same counsel, were convicted on June 2, 1961 and sentenced on June 7.

In 1964 Phelps moved under § 2255 to vacate his sentence. We affirmed the judgment denying the motion. Phelps v. United States. 10th Cir., 335 F.2d 547. In 1966 Phelps again moved under § 2255 to vacate the judgment. Leave was granted to proceed in forma pauperis, counsel was appointed, and an evidentiary hearing was held in which Phelps testified in substance that he had instructed his attorney to appeal his case and that his attorney had failed and neglected to do so. Upon consideration of the evidence, the trial judge (who was not the sentencing judge) seemed to think that "in view of the testimony this defendant might have felt intimidated or in fear of the consequences if he did appeal"; that the motion under § 2255 should be denied; but that the defendant should be allowed to appeal in forma pauperis. Formal notice of appeal was thereupon filed. We granted appeal in forma pauperis and appointed counsel. The government has moved to dismiss on the grounds that the appeal was not timely taken.

There is no suggestion here of fear or intimidation hindering the timely taking of appeal, but in his brief and on oral argument counsel seeks to sustain the appeal on the strength of Clonce's correspondence with the sentencing court and his attorney on the basis of which his appeal was allowed and the case decided on its merits.[1] See

---

1. The records and briefs in this case show that on June 6, 1961, the day before formal sentencing, Clonce wrote to the sentencing Judge from the Tulsa County Jail stating, "I would like to serve notice of my intentions to appeal my conviction in your court on June 2, 1961. I am without funds, and would like to receive some information as to what action I must take first. I've been told I may go through motions of a pauper's oath, and could receive a court appoint-

Clonce v. United States, 10 Cir., 356 F.2d 912. In that case no point was made of the timeliness of the appeal, and in a footnote we merely observed that no question of timeliness was raised and we would not, therefore, concern ourselves with that problem.

■ If the correspondence among Clonce, the court, and his attorney could be said to vicariously apply to Phelps, or if it could be said to have been done in his behalf, we would likewise be constrained to consider this case on its merits as we did Clonce's case. But, there is nothing in the correspondence which moved the court to allow the appeal in Clonce's case which made any reference whatsoever to Phelps. The two defendants had been separately indicted and although jointly tried, their appeals were necessarily separate, and Clonce's timely notice cannot be made applicable to Phelps.

■ The time for filing notice of appeal under Rule 37(a) (2), F.R.Crim. P., is mandatory and jurisdictional. And, the allowance of the appeal in the trial court will not confer otherwise nonexistent jurisdiction even in instances of excusable neglect. See Fennell v. United States, 10 Cir., 339 F.2d 920; Peoples v. United States, 10 Cir., 324 F.2d 689, 337 F.2d 91. The rule is, however, liberally construed to effectuate an appeal where the convicted and sentenced defendant timely attempts to give written notice of an appeal and is prevented from doing so through no fault of his own, i. e. see

Fallen v. United States, 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed.2d 760, or where the appeal is fraudulently or deceptively precluded. See Fennell v. United States, supra, and cases cited.

After appeal time had passed, and apparently having read the attorney's letters of June 27 and July 13 (see footnote 1) addressed to Clonce, Phelps wrote the attorney on July 19, 1961, stating, "Larry [Clonce] and I received your last letter a few days back, And after reading it several times and much careful thought and consideration we can see that what you suggest is the wisest move." A few days later on July 23 Phelps wrote to the sentencing judge stating in part, "I have no intention of asking you nor the court to modify the sentence that was imposed nor to appeal its findings. Instead I have accepted the fact that it was a just and fair trial and under the circumstances the crime warranted the sentence." He then proceeded to ask the court to reconsider the "type of sentence that we were given". He referred to a new sentence under which he would "stay within your jurisdiction throughout my sentence" so as to enable him to "become a sane and useful member of society".

On cross-examination, after testifying that he had instructed his attorney to take an appeal, Phelps was faced with his last letter to the judge. He answered that he was only "soft soaping the court" after appeal time had lapsed.

ed Attorney to voice may case. Any information as to what I must do would be * * * greatly appreciated." On June 13 the sentencing judge acknowledged the letter stating, "The attorney of your own choice who represented you in the case should advise you in connection with an appeal and I am requesting that he do so." Thereafter, on June 27, Clonce's attorney, who also represented Phelps, wrote to Clonce stating that he had a "very long talk with the judge", the substance of which was that the judge had "considered filing perjury charges against both of you". Later and on July 13, the attorney again wrote to Clonce stating that he had had trouble

"trying to keep perjury charges [from] being filed against you and Bob [Phelps] * * *"; that the Judge and District Attorney were anxious to file these charges and that it was his sincere belief after talking to both the judge and the District Attorney that "* * * it is better to let a dead dog lie, for you to serve your time and come out, than to proceed further in an appeal." Still later on December 26, 1962, the attorney wrote to Clonce stating in part, "* * * it was the opinion of Judge Savage and myself that we could not obtain any relief whatsoever for you in any appeal, so I did not perfect your appeal upon advice of Judge Savage."

There is certainly nothing in the correspondence or testimony to justify the inference that Phelps had been in any way intimidated or misled in the exercise of his right to appeal. Even though he may have been influenced or even deterred from giving timely notice by the advice of counsel, who acted after consultation with the sentencing judge, there is nothing to indicate that the advice was not actuated by counsel's best judgment in the circumstances. Indeed, counsel appeared at the trial court proceedings and offered to testify concerning the circumstances under which his advice was given. But, neither the trial court nor any of the parties deemed the testimony sufficiently pertinent to call the attorney. On the contrary, the trial court observed that "there is no attack at all on the representation in the trial of the case" and no intimation that the attorney had been guilty of any unprofessional conduct in failing to appeal the case.

We take the written word of the appellant that the decision not to take the appeal was made after "careful thought and consideration" and in the belief that he had been "fairly tried" and that "the crime warranted the sentence."